UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| | : CRIMINAL NO. 1:16-CR-162 |
| v. | : |
| | : |
| JWANE JOHNSON, | : |
| Defendant | : |

*M E M O R A N D U M*

*I.      Introduction*

Before this Court is Defendant Jwane Johnson's motion to suppress evidence following an encounter with police. (Doc. 18). Defendant argues that the police did not have reasonable suspicion to conduct an investigatory stop. (Doc. 19 at 5). For the reasons that follow, we will deny Defendant's motion.

*II.     Background*

We gather the following facts from our hearing on Defendant's motion to suppress.[1] On January 2, 2016, just before 2:00 p.m., Officer Darren Bates of the Harrisburg Police Department's (HPD) Street Crimes Unit (SCU) was in uniform operating an unmarked police car near the 200 block of Thirteenth Street in Harrisburg, Pennsylvania when he observed a black male driving a red 2006 Buick bearing a Pennsylvania registration. (Doc. 20 at 4). Bates believed the driver of the vehicle to be one Alfonso Carter based on information obtained several weeks prior, specifically that Carter operated a red Buick. (Id.) Bates had knowledge that Carter was wanted for felony

---

[1] We note that, although we do so without the benefit of a transcript from the suppression hearing, the parties' briefing as well as the court's notes from the hearing adequately describe the factual events that were testified to by law enforcement. (Doc. 19-20).

1

gun and drug charges and had an active warrant for his arrest, but could not see whether Carter was the driver of the Buick. (Id.)

Bates began to follow the Buick and radioed the vehicle's location and direction of travel to State Parole Agent Allen Shipley and HPD SCU Officer Tony Fiore, whom Bates asked to assist in approaching the vehicle and determining the identity of the driver. (Id.) Specifically, Bates believed that Agent Shipley could determine if the driver was Carter because Shipley had supervised Carter for about one year while Carter was on parole. Fiore and Shipley, who were in an unmarked police vehicle, responded to Bates' call and began travelling toward the Buick's location. Bates continued to follow and observe the Buick as it traveled southbound on the 400 block of Hummel Street, a location where it had been known that Carter lived until a few months prior. (Id.) Bates stopped at the stop sign of the intersection at Hummel and Swatara Streets and, from a distance of about seventy-five to one hundred feet away, observed the Buick pull over just south of Swatara Street and park, facing southbound, on the side of Hummel Street. (Id.) It is undisputed that the Buick was parked legally and had not committed any motor vehicle infractions. Another vehicle was parked approximately one car length in front of the Buick.

While the Buick was parked, Bates observed Agent Shipley and Officer Fiore drive their vehicle northbound on Hummel Street toward Swatara Street. (Id. at 5). When Shipley and Fiore spotted the Buick parked across the street facing southbound, they pulled their unmarked vehicle into the southbound lane of Hummel Street and parked, facing northbound against traffic, approximately twelve to twenty feet in front of the Buick.[2] (Id.) Neither Bates' nor Fiore's unmarked police vehicles activated their lights.

---

[2] Agent Shipley testified to this distance, while Officer Fiore approximated the distance to be fifteen feet and Officer Bates estimated the distance to be approximately one-half of a car length.

2

Agent Shipley and Officer Fiore, who were both in tactical gear identifying themselves as police, exited their vehicle and approached the Buick intending to determine whether Carter was the driver. (Id.). The officers did not draw their weapons and could not ascertain whether Carter was driver. As Officer Fiore approached the Buick, the driver, now known to be Defendant, looked up from the vehicle and made eye contact with the officers. Defendant then put his car in reverse and attempted to drive around Fiore's police vehicle.[3] (Doc. 19 at 4). As Defendant backed up onto the sidewalk and into a tree, Officer Fiore testified that he pulled out his gun, identified himself as police, and yelled numerous times for Defendant to stop the Buick.[4] Defendant attempted to maneuver the Buick around the police vehicle, and, in doing so, struck the police car's front bumper. (Id.) Defendant then proceeded to travel southbound on Hummel Street.

Believing the Buick to have struck either Agent Shipley or the police car, and still believing its driver to be Carter, Officer Bates activated his emergency lights and pursued the Buick for approximately eight blocks. (Id. at 4-5). When the Buick encountered another car blocking its path, Defendant exited the Buick while it was moving, causing it to collide with that car. (Id. at 5). Defendant then attempted to flee on foot, but was eventually arrested by police. (Id.). At this point, officers learned Defendant's identity, i.e., he was not Carter, and that there was an outstanding warrant for his arrest. During a search incident to the arrest, police found three bags of crack

---

[3] Although the officers testified that their unmarked car did not block the Buick in, it is clear that they parked close enough to cause Defendant to back up to get around the police car. We do not determine whether the Buick could be fairly characterized as "blocked in" under such circumstances.

[4] Officer Fiore testified to this fact, which was also in his police report. However, both Agent Shipley and Officer Bates testified that at no point were weapons drawn or Defendant told to stop. We accept as fact Officer Fiore's testimony that he drew his weapon and made these statements.

cocaine. On June 22, 2016, Defendant was indicted on several charges, one of which stems from this incident: possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) (Count Four).[5] (Doc. 1 at 4). On August 12, 2016, Defendant filed the instant motion to suppress. (Doc. 18).

*III.     Discussion*

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. In this case, Defendant argues that officers violated the Fourth Amendment by conducting an investigatory stop that was unsupported by reasonable suspicion. (Doc. 19 at 5). The Government responds that the stop was constitutional because (1) it was a mere encounter; (2) even if it were an investigatory stop, it was not effectuated under California v. Hodari D., 499 U.S. 621 (1991); and (3) the Supreme Court's decision in Utah v. Strieff, 136 S. Ct. 2056 (2016), precludes suppression because the search was too attenuated from the stop. We agree with the Government and will deny Defendant's motion.

"Police encounters with citizens fall into one of three broad categories, each with varying degrees of constitutional scrutiny: '(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.'" United States v. Brown, 765 F.3d 278, 288 (3d Cir. 2014) (quoting United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006)). "The first type of encounter does not implicate the Fourth Amendment." Id. "The second category . . . requires a showing that the officer acted with reasonable suspicion." Id. (noting officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal

---

[5] The other charges stem from a separate set of facts, unrelated to the events of January 2, 2016.

activity is afoot" (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000))). "[T]he third category (i.e., full-scale arrests) is proper only when an officer has probable cause." Id.

The first step in our analysis is to determine whether a seizure has taken place and, if so, when it occurred. "[A] Fourth Amendment seizure 'does not occur simply because a police officer approaches an individual and asks a few questions.'" Id. (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)). "A seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'" United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006) (quoting Hodari D., 499 U.S. at 626).

"Put another way, when a seizure is effected by even 'the slightest application of physical force,' it is immaterial whether the suspect yields to that force." Id. (quoting Hodari D., 499 U.S. at 625–26). "In contrast, if a suspect in the absence of physical force does not submit to an officer's show of authority, there is no seizure and no Fourth Amendment claim." Id. "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Id. The Supreme Court has articulated several factors to be considered as part of this objective inquiry, including, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554 (1980).

"Whether an individual has 'submitted' to a show of authority depends on both the nature of the show of authority as well as the suspect's conduct at the moment

5

the officer asserted his or her authority." United States v. Lowe, 791 F.3d 424, 430–31 (3d Cir. 2015). "When a suspect flees after a show of authority, the moment of submission is often quite clear: It is when the fleeing suspect stops, whether voluntarily or as a result of the application of physical force." Id. (citing Hodari D., 499 U.S. at 628–29). "[A] show of authority without actual submission is no more than an 'attempted seizure,' and a suspect's conduct in the interval between the show of authority and the submission can be considered in determining the reasonableness of the eventual seizure." Id. (quoting Brendlin v. California, 551 U.S. 249, 254 (2007)).

   Here, we agree with the Government and find that a seizure of Defendant did not occur until police were able to apprehend Defendant, by which time police had probable cause to effect an arrest. The totality of events prior to Defendant's arrest support that police did not effectuate a seizure; rather the interactions between the officers and Defendant was a mere encounter followed by an attempted seizure.

   Agent Shipley and Officer Fiore both approached Defendant's Buick with the intent of determining whether its driver was Alfonso Carter. Once Defendant saw the officers approaching, he placed his vehicle in reverse, in an apparent attempt to flee. See Brown, 448 F.3d at 245 (noting that if seizure occurred after defendant's escape attempt, we include attempt in reasonable suspicion analysis). Before this attempted flight, it is undisputed that the officers did not restrain Defendant's movement or make a show of authority.[6] Although Agent Shipley thereafter drew his weapon and ordered Defendant to stop numerous times, Defendant did "'not yield' to the officers' show of authority." Lowe, 791 F.3d at 433; United States v. Smith, 575 F.3d 308, 313 (3d Cir. 2009) ("The simple act

---

[6] We do not find that the officers restrained Defendant's movement by simply parking their unmarked car, without its lights activated, near Defendant's Buick and approaching his car.

of an assertion of authority by an officer is insufficient to transform an encounter into a seizure without actual submission on the part of the person allegedly seized."). Instead of submitting to the officers, Defendant backed his car into a tree and then proceeded to strike the front bumper of the officers' vehicle as he attempted to flee. Officer Bates then gave chase and Defendant was later apprehended.

Up until his apprehension, the interaction of the officers and Defendant was a mere encounter followed by an attempted seizure, neither of which required reasonable suspicion or probable cause. By the time Defendant was arrested, Defendant had committed multiple offenses (he drove into the officers' car and another car and then fled the scene). The police had sufficient probable cause to effect an arrest, and the subsequent search incident to arrest was valid as well.

IV.     *Conclusion*

Defendant's motion to suppress will be denied. Defendant was not seized under the Fourth Amendment until he was apprehended, at which point police had sufficient cause to arrest him. We will issue an appropriate order.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: October 18, 2016