UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| | : CRIMINAL NO. 1:16-CR-162 |
| v. | : |
| | : |
| JWANE JOHNSON, | : |
| Defendant | : |

*M E M O R A N D U M*

*I.      Introduction*

Before this Court is Defendant Jwane Johnson's motion to suppress evidence. (Doc. 32). Defendant challenges an inventory search of a vehicle in which he was a passenger. (Doc. 33 at 5). We will deny Defendant's motion.

*II.     Background*

We gather the following facts from a February 2, 2016 preliminary hearing in the Dauphin County Court of Common Pleas. (Doc. 33-1 at 1). On December 8, 2015, at approximately 1:00 a.m., Officer Christopher Auletta of the Harrisburg Police Department (HPD) was in a marked police vehicle driving southbound on Hummel Street when he observed a black Mazda 6 parked on the west side of the street, facing southbound. (Id. at 3-4). Officer Auletta observed two people in the vehicle. (Id. at 4). The vehicle's motor was running, but its lights were off in an unlit area. (Id.) Auletta activated his "take-down" lights—akin to a "large spotlight"—and the vehicle proceeded to pull away from the curb. (Id. at 4, 10). Auletta followed the vehicle and ran its license plate through a database, which revealed that its registration was suspended due to insurance cancellation. (Id. at 4) Auletta activated his emergency lights and sirens, and performed a traffic stop. (Id.)

1

Auletta approached the vehicle and explained to the driver, Yvette Smith, why she was stopped. (Id. at 4-5). Auletta obtained the credentials of Smith and her passenger, Defendant Jwane Johnson, and ran their names through databases. (Id. at 5). Smith had an outstanding summary warrant for her arrest. (Id. at 5). Defendant had no outstanding warrants, but his license was suspended and he was on probation. (Id. at 5, 8).

When backup officers arrived, Auletta radioed his supervisor, seeking permission to tow the Mazda. (Id. at 6). Officer Auletta asked Smith to step out of the car, and informed her that he would be confiscating the registration plate and would tow the vehicle. (Id.) Auletta told Smith that, per HPD policy, he would conduct an inventory search of the vehicle, at which point Smith became "extremely nervous." (Id.) The other officers then asked Defendant to step out of the vehicle. (Id.) Defendant was nervous when he was told that the officers would be searching the vehicle. (Id.) He was patted down for weapons "due to his nervous nature." (Id. at 7). Officer Auletta then conducted an inventory search of the vehicle. (Id.) Auletta found a crack pipe in a small pull-down tray under the steering wheel, and Smith was arrested. (Id.). Smith then spoke with Officer Auletta, and told him that Defendant "ha[d] something in the car." (Doc. 36-1 at 2). Auletta intended to continue his search, at which point Defendant fled on foot. (Id.) Because police had no reason to detain Defendant, they "let him go." (Doc. 33-1 at 7). After Defendant fled, Officer Auletta found a silver and black handgun underneath the passenger's seat. (Doc. 36-1 at 2). Smith was taken to the police station for booking. (Id at 2-3). After being read her Miranda rights, Smith agreed to talk to police, revealing that she attempted to buy a "20" of crack cocaine from Defendant, who informed her that he brought a gun into her car. (Id. at 3).

2

On June 22, 2016, Defendant was indicted on three charges: attempted distribution of cocaine, 21 U.S.C. § 846 (Count 1); felon in possession of a firearm, 18 U.S.C. § 922(g) and 924(e) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c) (Count 3).  On October 24, 2016, Defendant filed the instant motion to suppress, arguing that the inventory search of the Mazda violated the Fourth Amendment.  (Doc 33 at 5-7).  The Government argues that the inventory search was proper, that Defendant, as a passenger, had no privacy interest implicated by the search of the Mazda, and that, even if a privacy interest existed, Defendant abandoned that interest when he fled from the vehicle.  (Doc 36 at 7-10).

III.        *Discussion*

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV.  Although the right to challenge a search on Fourth Amendment grounds is generally referred to as "standing," the Supreme Court has clarified that the right "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." Rakas v. Illinois, 439 U.S. 128, 140 (1978).  Courts "use the term 'standing' as shorthand for determining whether a litigant's Fourth Amendment rights are implicated." United States v. Katzin, 769 F.3d 163, 197 n.6 (3d Cir. 2014), cert. denied, 135 S. Ct. 1448 (2015).

"Fourth Amendment standing 'requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]'" United States v. Kennedy, 638 F.3d 159, 163 (3d Cir. 2011) (quoting United States v. Baker, 221 F.3d 438, 441 (3d Cir. 2000)).  "Because the Fourth Amendment's protection against unreasonable

searches is predicated on the invasion by the government of a person's reasonable expectation of privacy, passengers are generally held to lack 'standing' to object to evidence discovered in a search of a vehicle." United States v. Mosley, 454 F.3d 249, 253 (3d Cir. 2006) (footnote omitted). "Fourth Amendment rights are personal rights, and a search of a car does not implicate the rights of non-owner passengers: the car is treated conceptually like a large piece of clothing worn by the driver." Id. As such, "[p]assengers in cars, unlike owners or licensees, have no reasonable expectation of privacy in the interior of the vehicle in which they are riding." Id.; see also Rakas, 439 U.S. at 134; Baker, 221 F.3d at 441–42 ("It is clear that a passenger in a car that he neither owns nor leases typically has no standing to challenge a search of the car.").

Here, Defendant was a passenger in the Mazda and was not its owner or operator. Although Defendant, as a passenger, can challenge the constitutionality of the stop, the stop of the vehicle is not at issue. Defendant only challenges the officers' search of the vehicle for which he lacks standing because, as a passenger, he had no reasonable expectation of privacy in the vehicle, and therefore his Fourth Amendment rights were not implicated. Mosley, 454 F.3d at 253. Because he lacks standing to challenge the search, we need not address whether the inventory search by police was proper.

*IV.     Conclusion*

Defendant's motion to suppress will be denied and an appropriate order will issue.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: November 14, 2016