UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    :
                                        :
                                        :  CRIMINAL NO. 1:16-CR-162
         v.                             :
                                          :
JWANE JOHNSON,               :
          Defendant        :

*M E M O R A N D U M*

I.       *Introduction*

Before the court is Defendant Jwane Johnson's motion for a new trial. (Doc.
76). After careful consideration of the applicable law, and because the interests of justice
warrant it, we will grant Defendant's motion and will order a new trial.

II.      *Background*

On June 22, 2016, Defendant was indicted on charges of attempted
distribution of cocaine base, 21 U.S.C. § 846 (Count One); being a felon in possession of
a firearm, 18 U.S.C. § 922(g) and 924(e) (Count Two); possession of a firearm in
furtherance of a drug trafficking crime, 18 U.S.C. § 924(c) (Count Three); and possession
with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1) (Count Four). (Doc. 1 at 1-4).
The charges on Counts One, Two, and Three relate to a traffic stop by police on
December 8, 2015. (Doc. 37). The charge on Count Four stems from a separate and
unrelated traffic stop on January 2, 2016.[1] (Doc. 30).

---

[1] We refer to these incidents as the December 8th and January 2nd stops. We characterize
the January 2nd encounter as a stop for ease of reference and acknowledge that we previously
found that, as to this stop, "the interaction of the officers and Defendant was a mere encounter
followed by an attempted seizure." (Doc. 30 at 6). Nothing in this opinion changes that finding.

Defendant filed motions to suppress evidence from each traffic stop, and to sever Counts One, Two, and Three from Count Four of the indictment. (Docs. 18-19, & 32-33). In the severance motion, Defendant argued that even if both traffic stops involved drug-related offenses, "they are clearly not based on the same act or transaction nor are they part of a common scheme or plan." (Doc. 19 at 7). After examining the events of each stop, we denied Defendant's motions to suppress. (Docs. 30-31 & 37-38). In a one-page order, we also denied Defendant's severance motion, noting: "Because [Rule] 8(a) permits joinder of two or more offenses if they 'are of the same or similar character,' we will deny Defendant's request for severance of Counts One and Four, which may be tried together." (Doc. 24 n.1). Trial began on December 5, 2016. (Doc. 65). In an in-chambers conference before trial, Defendant requested reconsideration of the court's denial of his severance motion. (Doc. 66 at 220). We denied that motion and proceeded to trial on all counts. (See Docs. 65-66). We recount the trial testimony and evidence.

As to the traffic stop on December 8, 2015, Officer Christopher Auletta of the Harrisburg Police Department (HPD) testified that, at approximately 1:00 a.m., he was patrolling the Allison Hill section of the city—a high crime and drug area—in a marked police vehicle when he observed a black Mazda sedan with two occupants parked on the street. The sedan was in an unlit area with its lights off. Auletta activated his takedown lights, and the sedan pulled away from the curb. Auletta followed the vehicle and ran its license plate through a database, which revealed that its registration was suspended. Auletta then executed a traffic stop of the sedan and informed its driver, Yvette Smith, why he had stopped the vehicle.

Auletta obtained the credentials of Smith and her passenger, the Defendant, and checked their names through a database. Auletta learned that Smith had an outstanding summary warrant for her arrest. Auletta asked Smith and Defendant to exit the vehicle, and proceeded to inform them that, per HPD policy, he would be conducting an inventory search of the vehicle, confiscating its registration, and towing the vehicle. When Defendant was told that officers would be searching the vehicle, he "appeared nervous." Backup officers patted down Defendant, but found no weapons or contraband.

Auletta searched the car and found a broken glass crack pipe in a tray under the steering wheel. Auletta arrested Smith and then asked her if there was anything else in the car, at which point Smith requested to speak privately with Auletta. She informed Auletta that Defendant "had something in the car." As Auletta spoke with Smith, Defendant fled from the scene. Auletta continued to search the vehicle and found a semiautomatic handgun under the front passenger seat.

Following Officer Auletta's testimony, the Government called Smith, who testified to the events leading up to the stop on December 8th. Smith testified that, after having a bad day at work, she went to Allison Hill to purchase crack cocaine. Smith retrieved a crack pipe from a friend and parked her car, at which point she saw Defendant. Smith did not know Defendant, but approached him to purchase drugs. Defendant entered the passenger side of Smith's vehicle and told Smith that he had to adjust "his waist because his gun was slipping." Defendant pulled out a plastic bag of what he said to be crack cocaine, at which point Smith saw Officer Auletta's lights come on and pulled away from the curb. Smith then testified to the ensuing traffic stop. On cross examination, Smith testified that she signed an agreement with the Government, which

generally provided that she agreed to cooperate in exchange for the Government not charging her with any federal crimes. Pursuant to the agreement, the Government relayed Smith's cooperation to the Dauphin County District Attorney's Office.

As to the traffic stop on January 2, 2016, the Government called HPD Officers Darren Bates and Anthony Fiore. Officer Bates testified that he was on uniformed patrol in an unmarked police car at approximately 2:00 p.m. in the Allison Hill area, just blocks away from where the December 8th stop occurred, when he observed a black male driving a red 2006 Buick. Based on previously obtained information, Bates believed the vehicle belonged to Alfonso Carter, an individual who was wanted by police. Bates followed the vehicle and radioed its location to State Parole Agent Allen Shipley and Officer Fiore, hoping that they could assist in identifying the driver. Officer Fiore's testimony largely confirmed these events.

After the Buick stopped, Bates parked his vehicle and waited for the other officers to arrive. Agent Shipley and Officer Fiore, travelling in their unmarked police vehicle, stopped near the Buick. Fiore and Shipley exited their vehicle, at which point the Buick backed up, hit a tree, and took off. Officer Bates pursued the Buick for several blocks, at which point an obstruction in the street caused the vehicle to stop. Defendant, who was the driver of the Buick, exited the vehicle and fled, but was soon apprehended. Defendant was arrested and searched by police, who found two cell phones on his person and, later, plastic bags containing 2.45 grams of cocaine base. As to this stop, the Government's expert witness opined that, based on his review of the police reports and the way the bags were packaged, the cocaine was packaged for distribution.

On December 6, 2016, the jury found Defendant guilty on all counts in the indictment. (Doc. 57-58). On April 13, 2017, Defendant filed the instant motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. (76-77). Defendant asks the court to vacate the jury's verdict "in light of the prejudicial impact of trying two totally separate and unrelated cases together." (Doc. 76 ¶ 8). The Government filed its opposition brief on May 25, 2017. (Doc. 82). Defendant's motion is ripe for disposition.

III.       *Discussion*

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "[W]hen a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002). "[E]ven if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" United States v. Silveus, 542 F.3d 993, 1004-05 (3d Cir. 2008).

In his motion for a new trial, Defendant argues: (1) that the court erred in denying severance of Counts One, Two, and Three from Count Four; and (2) that, during trial, the Government made impermissible statements during closing arguments by using the two separate traffic stops interchangeably to argue Defendant's guilt on all counts.

A.    *Defendant's Severance Motion*

Federal Rule of Criminal Procedure 8(a) provides for joinder of offenses. An "indictment or information may charge a defendant in separate counts with [two] or more

offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8(a) applies to "cases involving a single defendant charged with multiple offenses." United States v. Irizarry, 341 F.3d 273, 287 (3d Cir. 2003). The purpose of Rule 8(a) is "to promote economy of judicial and prosecutorial resources." United States v. Gorecki, 813 F.2d 40, 42 (3d Cir. 1987).

"Joinder of charges is the rule rather than the exception, and Rule 8 is construed liberally in favor of initial joinder." United States v. Lee, No. 4:14-CR-0254, 2015 WL 12631238, at *1 (M.D. Pa. June 2, 2015) (quoting United States v. Brown, No. 1:CR02-146-02, 2002 WL 32739530, at *3 (M.D. Pa. Dec. 17, 2002)). Rule 8(a) allows "joinder of offenses that 'are of the same or similar character,' even if such offenses do not arise at the same time or out of the same series of acts or transactions." United States v. Hersh, 297 F.3d 1233, 1241 (11th Cir. 2002); see also United States v. Niederberger, 580 F.2d 63, 66 (3d Cir. 1978). "Indeed, Rule 8(a) is not limited to crimes of the 'same' character but also covers those of 'similar' character, which means '[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.'" Hersh, 297 F.3d at 1241 (quoting United States v. Walser, 3 F.3d 380, 385 (11th Cir.1993)); see also Irizarry, 341 F.3d at 312 n.4.

Conversely, Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Severing offenses charged in the same indictment under Rule 14 is within "the sound discretion of the district courts." United

States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 540 (1993).

"[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials," United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005) (quoting Zafiro, 506 U.S. at 540), and "[m]ere allegations of prejudice are not enough," id. at 775-76. A defendant seeking severance under Rule 14(a) "bear[s] a 'heavy burden' and must demonstrate not only that the court would abuse its discretion if it denied severance, 'but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial.'" Lore, 430 F.3d at 205 (quoting Urban, 404 F.3d at 776). "[T]he question of prejudice hinges upon 'whether the jury will be able to compartmentalize the evidence as it relates to separate [offenses] in view of its volume and limited admissibility.'" United States v. Walker, 657 F.3d 160, 170 (3d Cir. 2011) (quoting United States v. Davis, 397 F.3d 173, 182 (3d Cir.2005)); United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981) ("Of primary concern . . . is 'whether the jury can reasonably be expected to compartmentalize the evidence,' as it relates to each count by following the instructions of the trial court."). "Where additional charges against a single defendant are 'relatively straightforward and discrete,' we have 'not doubt[ed] that the jury reasonably could have been expected to compartmentalize the evidence . . . and actually did so." Walker, 657 F.3d at 170 (quoting Lore, 430 F.3d at 205).

Here, when Defendant initially requested severance of the offenses as to each traffic stop at issue, he provided no authority, outside of generally citing Rules 8(a)

and 14(a), for why severance was necessary.  Defendant devoted only two sentences of argument to that portion of his motion, arguing: (1) that "even though both arrests involved drugs, they are clearly not based on the same act or transaction nor are they part of a common scheme or plan"; and (2) that a "jury would be swayed" if a joint trial were held on the traffic stops because Defendant "had two police contacts close in time involving drugs and in the one, a gun."  (Doc. 19 at 7).

As to the first argument, it is of little consequence that the two traffic stops were not part of the same transaction, as joinder under Rule 8(a) is permitted where the offenses charged "are of the same or similar character."  Fed. R. Crim. P. 8(a).  We denied Defendant's severance motion because each traffic stop here was straightforward, discrete, and involved offenses that were either part of the same transaction or were similar in character.  Defendant was charged with attempted distribution of cocaine base, being a felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking crime as to the December 8th traffic stop, and charged with possession with intent to distribute cocaine base as to the January 2nd traffic stop.  The firearms charges were sufficiently connected to the attempted distribution charge, as they all stemmed from the December 8th traffic stop; likewise, the attempted distribution offense on December 8th was similar in character to the possession with intent to distribute charge on January 2nd, even if both charges stemmed from different, unrelated stops.  At the time, and under the circumstances, each offense was part of a drug-related crime and could be properly joined.  See Gorecki, 813 F.2d at 41 (noting that "drug and weapons offenses were properly joined under [Rule] 8(a) and that the defendant has not advanced sufficient proof of prejudice from the joinder under [Rule] 14 to justify a new trial").

Moreover, contrary to Defendant's argument that we did not address prejudice in trying the offenses for each traffic stop together, (Doc. 77 at 2), in our denial of his severance motion, we relied on United States v. Rich, 326 F. Supp. 2d 670 (E.D. Pa. 2004), a case involving joinder of multiple firearms and drug charges occurring months apart, not only to support our finding that the offenses here were similar in character, but also that "there was no prejudice from joining the separate offenses" because "each of the offenses was relatively short and simple." In Defendant's severance motion, he provided no support, beyond speculation that a jury "would be swayed," as to how joinder would result in substantial prejudice, and had not met his heavy burden of showing that joinder would impair a specific trial right or prevent the jury from making a reliable judgment about guilt. Given the lack of authority or support in his motion, we did not delve into a prejudice analysis, but will do so here.

In determining whether a criminal defendant is prejudiced by joinder of offenses, we consider "factors such as whether the presentation of separate counts with distinct and extensive evidence confused the jury, whether the charging of several crimes made the jury hostile, and whether the jury was able to segregate the evidence as to each count." United States v. Torres, 251 F. App'x 763, 764 (3d Cir. 2007) (nonprecedential). When we denied Defendant's severance motion, we saw no apparent risk of prejudice that a jury would not be able to compartmentalize or would confuse the evidence as to each traffic stop. Aside from occurring in roughly the same area, the two stops were remarkably distinct, containing few similarities. Each stop occurred on different dates and at different times: December 8, 2015, at 1:00 a.m., and January 2, 2016, at 2:00 p.m. There was no overlap in the officers involved in each stop, and each stop involved different vehicles.

Importantly, each traffic stop involved vastly different circumstances, and Defendant's guilt on the respective offenses for each stop relied on different evidence. For the stop on December 8th, Defendant was a passenger in Smith's car and fled on foot; his conviction largely depended on Smith's testimony and whether a jury believed that Defendant attempted to sell her drugs and whether he possessed the firearm found in her car. For the stop on January 2nd, Defendant led police on a car chase, which resulted in his apprehension; his conviction depended on whether, under the circumstances, the bags of cocaine base later found on him were intended for distribution or personal use. When we denied the severance motion, a jury could easily segregate the evidence for each stop.

Moreover, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539. In this case, to minimize any prejudice from our denial of Defendant's severance motion, we provided a general admonition to the jury that it must separately consider the evidence of each stop. The jury was instructed as follows:

> Mr. Johnson is charged with more than one offense. Each offense is charged in a separate count in the indictment. The offenses occurred on two separate dates, December 8th of '15 and January 2nd of 2016, and you must consider each offense separately.
> The number of offenses charged is not evidence of guilt and should not influence your decision in any way. You must consider separately the evidence that relates to each offense, and you must return a separate verdict for each offense.
> For each offense charged, you must decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of that particular charge. Your decision on one offense, whether guilty or not, should not influence your decision on the other offense charged. That is, each offense must be considered separately. They are separate and distinct, and you must treat them that way.

After giving this instruction, we asked the parties if they had any exceptions to the charge or requests for further instructions. Defendant was "satisfied with [the] jury instructions."

Because "[w]e presume that the jury follows [our] instructions," and because "such instructions [are] persuasive evidence that refusals to sever did not prejudice the defendant," we perceive no error in initially denying Defendant's severance motion. Urban, 404 F.3d at 776 (3d Cir. 2005).

B. *Prejudice from Prosecutor's Statements*

Nevertheless, in his motion for a new trial, Defendant refers to our reliance on Rich in denying severance, and notes that the defendant in Rich was granted a new trial because of improper comments by the government when it asked the jury to "cumulate the evidence" and "infer a criminal disposition" regarding the drug offenses against the defendant. (Doc. 77 at 7-8); Rich, 326 F. Supp. 2d at 682.

"Prosecutorial misconduct does not always warrant the granting of a mistrial." United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir. 1995). "[I]mproper statements by a prosecutor do not in and of themselves require reversal, but must be analyzed on a case-by-case basis pursuant to the harmless error doctrine." Koehler v. Wetzel, No. 3:12-CV-00291, 2015 WL 2344932, at *64 (M.D. Pa. May 14, 2015) (citing Zehrbach, 47 F.3d at 1267). "The harmless error doctrine requires that the court consider an error in light of the record as a whole, but the standard of review depends on whether the error was constitutional or non-constitutional."[2] United States v. Gambone, 314 F.3d 163, 177 (3d Cir. 2003) (quoting Zehrbach, 47 F.3d at 1265).

"Non-constitutional error is harmless when it is highly probable that the error did not contribute to the judgment." Wetzel, 2015 WL 2344932, at *64 (quoting Gambone, 314 F.3d at 177). "Highly probable requires that the court possess a sure conviction that

---

[2] We do not address Defendant's assertion that the Government's "improper remarks were of constitutional proportions," (Doc. 77 at 9), because, as in Rich, we find that the "standard applicable to non-constitutional errors is met in this case[.]" Rich, 326 F. Supp. 2d at 681.

the error did not prejudice the defendant." Id. In determining the prejudicial nature of improper prosecutorial comments, we consider: (1) the scope of the objectionable comments and their relationship to the entire proceeding; (2) the ameliorative effect of any curative instructions given; and (3) the strength of the evidence supporting the defendant's conviction. Zehrbach, 47 F.3d at 1265. "In making this determination, a court must examine the prosecutor's statements in context to determine their probable effect on the jury's ability to judge the evidence fairly." Wetzel, 2015 WL 2344932, at *64 (citing United States v. Young, 470 U.S. 1, 11-14 (1985)). "Stated otherwise, the arguments of counsel must be judged in the context in which they were made, bearing in mind that arguments of counsel carry less weight with a jury than do instructions from the court." Id. (citing Boyde v. California, 494 U.S. 370, 384 (1990)).

In Rich, the district court initially denied the defendant's severance motion on multiple firearms and drug charges which occurred months apart, and, as we did here, found that "the evidence as to each of the offenses was relatively short and simple, [and] there was no prejudice from joining the separate offenses." Rich, 326 F. Supp. 2d at 672, 679. In that case, after the government linked together the three incidents at issue in its closing argument, the defendant renewed his severance motion and subsequently filed a motion for a new trial based on the prosecutor's closing, in which the prosecutor "essentially asked the jury to cumulate the evidence of each of the crimes charged." Id. at 680. The district court noted that if the motion for a new trial were based only on joinder of the offenses, it "would not hesitate to find lack of error or prejudice." Id.

However, the court in Rich recounted the prosecutor's closing argument, which mentioned similarities "in all three incidents" at issue, commented on "common

threads that r[a]n through each and every one of these incidents," and remarked that the defendant was "just so unlucky that he happens to be in three cars . . . on three different occasions[.]" Id. After considering the "comments in the context of the trial as a whole," the court analyzed the three Zehrbach factors and granted a new trial, finding: (1) that because the one and one-half day trial was short and the evidence on each count simple, the prosecutor's comments "provided an overarching, yet impermissible, theme to the government's closing argument"; (2) that although the judge provided an instruction to the jury to consider the evidence on each count separately, and although jurors are presumed to follow such an instruction, the instruction "represented one paragraph in twenty-two pages of instructions read aloud to the jury" and "at some point, a curative instruction cannot undo the damage of improper argument"; and (3) "the evidence, when considered separately as to each count . . . was not overwhelming." Id. at 681-82.

Bearing in mind the court's persuasive reasoning in Rich, we analyze (1) the scope of the Government's comments and their relationship to the entire proceeding; (2) the ameliorative effect of any curative instructions given; and (3) the strength of the evidence supporting Defendant's conviction.

1.    *Scope of the Objectionable Comments*

Here, Defendant argues that "[t]his case is no different" from Rich because the Government made arguments in closing where it improperly attempted to link the two traffic stops to insinuate Defendant's guilt on all charges. (Doc. 77 at 8). In particular, Defendant references the following passages from the Government's closing:

> [Prosecutor:] The gun was his. She told you that. He was adjusting himself. He told her that he had a gun. He also said, I have to adjust my waist. He protested them searching the vehicle. He ran. And, again, he ran on January 2nd as soon as he saw those officers because he knew

why—as soon as he saw those officers, he thought they were coming to get him because he had a gun on December 8th.

. . . .

[Prosecutor:] You heard from Officer Neff. You heard from Officer Neff the tools of the trade of a drug dealer. They include drugs, and these drugs, in particular, are packaged in a way in which they're packaged for resale.

Now, you had—in his pocket, in his right jacket pocket, he had a Ziploc bag. In that Ziploc bag is a large rock, and then there are three smaller rocks, each in a corner-tied Ziploc bag. He's ready to go. He's ready to sell these three, and then, as needed, he can break these ones off and get ten more.

Each of these, what was it? It was a 20. What was Yvette Smith up in the corner of Hummel and Kittati[n]ny on December 8th to get? A 20. The defendant is a drug dealer. The tools of the trade: drugs, phones, a gun. He's not a user, he's not a user.

And you heard in the opening statement and you heard a couple times through witnesses defense counsel wants to say that this is here and it was on his person because he was using it because he wasn't distributing it.

Then why did he get in the car on December 8th with Yvette Smith at the corner of Hummel and Kittati[n]ny? Was it to buy drugs off of her? Then why weren't the drugs found in the car? They were on him because he ran away with them. He got rid of the gun, but he kept the drugs.

If he was a user, if he had such a habit that he was going to burn through so much crack, how was he able to slam a car in reverse, smash into a tree, and then take off for ten blocks eluding police officers and then jump out of the car and continue to run?

If he was a user, he would not have been able to have—he would not have been able to get away from the police the way that he was on January 2nd. Can somebody high on crack do that? Can he navigate through Allison Hill in a car getting away from police?

And, most importantly, if he was a user, where was the paraphernalia? Where was his crack pipe? Think about it. Think about what Ms. Smith told you. Ms. Smith, before she went up there, the first thing she did is, she stopped over on the corner, met her buddy, and said, hey, can I get a crack pipe? He didn't have a crack pipe. He didn't have any way of ingesting that crack. The defendant was a drug dealer.

. . . .

[Prosecutor:] And in terms of distribution, a teaspoon of sugar or salt or whatever it is, ladies and gentlemen, it doesn't matter if this is a teaspoon because it's not sugar and it ain't salt. What it is is crack cocaine

that was found on the defendant.  And what Agent Neff told you was, this is enough—this is three doses, three 20-dollar bags, and this is enough to make ten more.  This is $200 worth of narcotics.

The size of it?  Additionally, you see how small it is.  Whenever they patted him down on the scene on January 2nd, they patted him down, they didn't find this.  Again, they were patting him down for a gun, and then they were moving him over to the booking area where they were then able to find this.

The same thing on December 8th, they patted him down.  He had already gotten rid of the gun.  He had put it under the seat.  So the drugs that were on him at that point, they took off with him.  If it was anything else, if it was anything else, if it was him trying to buy drugs off of her or some other, you would have found the crack in the car.  You didn't.

(Doc. 66 at 226-27, 232-33, & 249-50; 77 at 5-6).

Defendant argues that these passages in the Government's closing prejudiced his right to a fair trial because the Government "used the joint trial as an opportunity to commingle the evidence to gain a conviction." (Doc. 77 at 9).  As to the traffic stop on December 8th, Defendant argued that he did not possess the firearm in question and was not guilty of attempted distribution of crack cocaine, and as to the traffic stop on January 2nd, Defendant argued only that the drugs were for personal use.  (Id. at 8).  The Government contends that its closing was "wholly appropriate," and posits that this case is "unequivocally distinguishable" from Rich by asserting that it did not attempt to use the separate criminal incidents as evidence itself, did not "cumulate the evidence against Defendant," did not "point out similarities between the two criminal incidents," and "did not point out the improbability of [Defendant] being involved in multiple criminal incidents." (Doc. 82 at 10-12).

Contrary to the Government's contention, it is difficult to distinguish Rich from this case, although we do recognize that Rich is a decade-old, non-binding authority from the Eastern District of Pennsylvania.  In the above-referenced passages, the

Government made multiple objectionable statements linking the events of each traffic stop together.  Although the Government's comments were less overt than those in <u>Rich</u>, wherein the government explicitly referenced "common threads that r[a]n through each and every one of these incidents," 326 F. Supp. 2d at 680, the suggestions made by the Government here were similarly inappropriate, and the prejudicial impact of its argument implicated Federal Rule of Evidence 404(b), <u>see</u> <u>United States v. Smith</u>, 725 F.3d 340, 346 (3d Cir. 2013) ("That the Government did not explicitly make a propensity argument does not change the outcome, particularly given that it did invite the jury to make the improper inferential leaps at summation . . . with the rhetorical questions . . . .").

   Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  An exception to this rule provides that such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Where evidence is offered to prove a proper, non-propensity purpose under Rule 404(b), the prosecutor should provide "notice of the general nature of any such evidence that the prosecutor intends to offer at trial."  Fed. R. Evid. 404(b)(2)(A).

   "Rule 404(b) is a rule of general exclusion," and "directs that evidence of prior bad acts be excluded—unless the proponent can demonstrate that the evidence is admissible for a non-propensity purpose."  <u>United States v. Repak</u>, 852 F.3d 230, 240 (3d Cir. 2017) (quoting <u>United States v. Caldwell</u>, 760 F.3d 267, 276 (3d Cir. 2014)).  "Because Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts

evidence has 'the burden of demonstrating [the evidence's] applicability.'" <u>Id.</u> at 241 (quoting <u>Caldwell</u>, 760 F.3d at 276). "Admissibility under Rule 404(b) *requires* the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction." <u>Id.</u> (emphasis added).

"[T]he use of prior-acts evidence requires care from prosecutors and judges alike." <u>United States v. Davis</u>, 726 F.3d 434, 442 (3d Cir. 2013). "In proffering such evidence, the government must explain how it fits into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." <u>Id.</u> "And then the 'district court, if it admits the evidence, must in the first instance, rather than the appellate court in retrospect, articulate reasons why the evidence also goes to show something other than character." <u>Id.</u> The district court's "reasoning should be detailed and on the record; a mere recitation of the purposes in Rule 404(b)(2) is insufficient." <u>Id.</u> "[T]hese requirements are 'so often honored in the breach' that they resonate 'about as loudly as the proverbial tree that no one heard fall in the forest.'" <u>Id.</u>

Here, as indicated, the significant issue underlying the instant motion and the prejudicial nature of the Government's closing argument is Rule 404(b); specifically, whether the Government could—as it did in closing—use events related to the charged conduct of attempted drug distribution and possession of a firearm on December 8th to suggest that Defendant was guilty of possession with intent to distribute on January 2nd. This issue was not highlighted in Defendant's initial severance motion, and was only

raised at the eleventh hour.  (Doc. 50).  On the morning of trial, Defendant filed a motion *in limine* raising five claims, one of which was a bare assertion that "the two [traffic stops] would not be admissible in separate trials pursuant to Rule 404(b)."  (Id.)  Defendant provided no case law to support the argument, and, after noting the applicable Federal Rules of Evidence, simply stated that "[t]he Government will argue to the jury that these two unrelated events should be considered as evidence that Mr. Johnson is a drug dealer."  (Doc 50 at 3).  Regrettably, as is apparent from the above-quoted portions of its closing, this is, in part, precisely what the Government argued.

We begin by noting the peculiar nature of this case, where, due to our denial of Defendant's severance motion, the other-acts evidence that was admitted was actually contemporaneously charged conduct of a separate but unrelated traffic stop that occurred one month prior to the January 2nd stop when Defendant was found with bags containing small quantities of cocaine base.  A similar peculiarity under Rule 404(b) led the court in Rich to grant the defendant a new trial and to subsequently deny the government's motion for reconsideration.  United States v. Rich, 343 F. Supp. 2d 411, 412 (E.D. Pa. 2004).  In rejecting the government's contention "that its closing argument was proper because had these offenses been tried separately, evidence of each of the other acts would have been admissible under Federal Rule of Evidence 404(b)," the court in Rich stated: "where the 'other acts' are charges that are being tried at the same time, allowing the government to tie the evidence for each individual count together in such a way violates the basic constitutional tenet that a defendant must be proven guilty of each count beyond a reasonable doubt."  Id. at 414-15.  In denying reconsideration, the court in Rich added that

it had a duty to avoid prejudice in cases of joinder, and, under the circumstances, could not ensure that procedural safeguards of notice under Rule 404(b) were honored.

When Defendant raised this 404(b) issue on the morning of trial, he did not highlight the four-part test required of the court for determining admissibility under the Rule, although he did note that the court should make a finding regarding the probative value and unfair prejudice of the evidence. (Doc. 50 at 3). Moreover, because of the untimely filing of his motion *in limine*, Defendant's objection was handled in an in-chambers pretrial conference, where we denied the motion. When we denied the motion—and, for that matter, Defendant's severance motion—it was not apparent that the Government would attempt to suggest propensity between Defendant's attempt to deal cocaine to Smith on December 8th and his intent to distribute the cocaine found on him during the separate, unrelated traffic stop on January 2nd. In any event, due to last-minute nature of the motion *in limine*, the Government did not respond to the motion or establish on the record why it would be permissible under Rule 404(b) for it to use the December 8th stop as evidence toward Defendant's guilt of possession with intent to distribute on January 2nd. Moreover, because our understanding was that the Government would separately argue the independent evidence for each stop, so as not to connect the incidents or implicate Rule 404(b), we never addressed any of the factors in Repak, 852 F.3d at 241, or put our rationale on the record. These shortcomings provide context for why the Government's subsequent statements during closing argument were improper and why we do not "possess a sure conviction that the error did not prejudice" Defendant's trial. Gambone, 314 F.3d at 177.

In its closing, the Government argued that Defendant was a "drug dealer" by suggesting that the crack cocaine found on January 2nd could not have been for personal use for reasons that implicated Defendant's activities during the separate and unrelated December 8th traffic stop.  (Id. at 232-33).  The Government inferred that the cocaine found on Defendant on January 2nd was not for personal use because Defendant intended to sell cocaine to Smith on December 8th; because Defendant possessed a gun on December 8th; because the cocaine found on January 2nd was packaged in similar quantities as the amount Smith sought to purchase on December 8th; and because no drug paraphernalia was found on Defendant to indicate personal use on January 2nd, in contrast to Smith who had such paraphernalia on her on December 8th.  (Id. at 232-33, 49-50).  In addition to these suggestions, the Government went further than commenting on Defendant's flight during each stop, but connected the stops and speculated that Defendant fled on January 2nd because "he thought [the officers] were coming to get him because he had a gun on December 8th."  (Id. at 227).

In light of Rule 404(b)'s prohibition of the use of other acts to prove action in conformity therewith, the Government's comments connecting the events of December 8th to those on January 2nd were improper.  See Rich, 343 F. Supp. at 415-16.  Although the Government could independently comment on the evidence for each stop's charges, it improperly conflated the evidence from each stop and used one stop as evidence of Defendant's guilt as to charges stemming from an unrelated stop, without providing notice under 404(b) of same or articulating a proper, non-propensity purpose for the evidence.

In its closing, the Government attempted to rebut Defendant's trial theory that the cocaine "was on his person [on January 2nd] because he was using it" by stating

in the next line: "Then why did he get in the car on December 8th with Yvette Smith at the corner of Hummel and Kittati[n]ny?  Was it to buy drugs off of her?"  (Doc. 66 at 232).  This line of argument is problematic under Rule 404(b).  As the Third Circuit has stated: "The problem with this line of reasoning is that, for the evidence of the [December 8th] drug sale to speak to [Defendant's] motives [on January 2nd], one must necessarily (a) assume something about [Defendant's] character based on the [December 8th] evidence (that he was then a drug dealer), and (b) infer that [Defendant] acted in conformity with that character [on January 2nd] by dealing drugs . . . .  This clearly violates Rule 404(b) because the Government used the [December 8th] drug deal 'to prove [Defendant's] character [as a drug dealer] in order to show that on a particular occasion [Defendant] acted in accordance with th[at] character."  United States v. Smith, 725 F.3d at 346.

Moreover, by arguing in closing that "[D]efendant is a drug dealer[, and possessed t]he tools of the trade: drugs, phones, a gun," (Doc. 66 at 232), the Government cumulated Defendant's possession of a gun on December 8th with evidence of the phones and drugs found during the separate stop on January 2nd to infer Defendant's drug-dealer disposition.  Under the circumstances, this was improper.  See United States v. Chavis, 296 F.3d 450, 459 (6th Cir. 2002) ("The 'tools of the trade' argument generally permits joinder only when the firearms charges and the drug charges are 'sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan,' as when guns are used in connection with the drug offense or when both guns and drugs are uncovered in the same search." (quoting Gorecki, 813 F.2d at 42)).  Although it was not initially prejudicial to join in the same trial the December 8th firearms and drug charges with the January 2nd drug

distribution charge, prejudice ensued when the Government used the December 8th gun evidence to show that Defendant was a "drug dealer" and then suggested a propensity between such evidence and Defendant's intent to distribute on January 2nd.

Finally, it appears that the Government improperly comingled Defendant's other act of drug possession on January 2nd to support its claim that Defendant attempted to distribute drugs to Smith on December 8th, stating: "[officers] patted [Defendant] down on the scene on January 2nd . . . they didn't find [drugs]. . . . The same thing on December 8th, they patted him down. He had already gotten rid of the gun. He had put it under the seat. So the drugs that were on him at that point, they took off with him. If it was anything else, if it was anything else, if it was him trying to buy drugs off of her or some other, you would have found the crack in the car. You didn't." (Doc. 66 at 250). As the Third Circuit has noted, possession and distribution are separate acts, and the former cannot be used as evidence to prove the latter. Davis, 726 F.3d at 444 ("Possession and distribution are distinct acts . . . and these acts have different purposes and risks. A prior conviction for possessing drugs by no means suggests that the defendant intends to distribute them in the future. . . . In cases such as this, there is an ever-present danger that jurors will infer that the defendant's character made him more likely to sell the drugs in his possession.").

The two traffic stops in this case were not part of the same transaction. In fact, in permitting joinder, we relied only on the similar character of the offenses, not the factual similarities between the stops. Our basis for finding that no prejudice resulted from joinder here was the opposite rationale—the two traffic stops were distinct and a jury could compartmentalize the evidence from each stop because they were separate in time and as to the conduct and evidence involved. See supra Section III. A; United States v. Hall,

858 F.3d 254, 274-75 (4th Cir. 2017) ("[T]he fact of a defendant's past involvement in drug activity 'does not in and of itself provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place, or pattern of conduct.").

We find it improper for the Government to have implied that Defendant was more likely a "drug dealer," (Doc. 66 at 232), on January 2nd because of his actions on December 8th.  This finding is especially true in light of the fact that the Government did not provide notice under 404(b) of its intent to do so, and when it never articulated on the record how the stop on December 8th "fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed drug offenses [on December 8th], he therefore is more likely to have committed [the distribution offense on January 2nd]." United States v. Sampson, 980 F.2d 883, 887 (3d Cir. 1992); Caldwell, 760 F.3d at 277 ("[I]f the proponent neglects or is unable to articulate this chain of inferences . . . failure to exclude such evidence constitutes reversible error."); see also Hall, 858 F.3d at 274 ("Due to the lack of linkage between the prior bad act and the charged offense, we concluded that the evidence [wa]s relevant primarily to establish [the defendant]'s character as a drug dealer—the very type of evidence that the limitation imposed by Rule 404(b) was designed to exclude." (internal citations omitted)).

The Government's closing argument is hard to justify or distinguish from that in Rich, especially in light of its placement within the joint trial on separate incidents and its implications under Rule 404(b).  In this regard, we note that the trials here and in Rich were short, lasting only one and one-half days.  Given this context, we find persuasive the court's reasoning in Rich that a short joint trial on separate incidents allowed the Government to provide "an overarching, yet impermissible, theme" to its closing.  Rich,

326 F. Supp. 2d at 682. Had the Government conveyed its intent to comingle evidence from the two traffic stops prior to closing, Defendant's trial would have been different—the Government's intent would be on the record, we would have addressed the 404(b) issues raised, and, if we found the evidence admissible for a proper, non-propensity purpose,[3] we could have provided a limiting instruction to the jury. None of these occurred.

Accordingly, in light the trial record and our failure to address significant issues under Rule 404(b), we cannot say that we have a sure conviction that the Government's objectionable comments in closing argument did not prejudice Defendant's trial. See United States v. Lopez, 635 F. App'x 49, 53-54 (3d Cir. 2015).

### 2. *Ameliorative Effect of Curative Instructions*

We also find, as the court did in Rich, that our general instruction to the jury to separately consider the evidence as to each traffic stop bore little weight in light of the Government's closing and the lack of a specific limiting instruction. As here, the court in Rich provided a general instruction in its final charge that the jury should separately

---

[3] We recognize that the Third Circuit has "held that evidence of past distribution is relevant to prove intent to distribute in a later distribution trial." See Davis, 726 F.3d at 443. However, such a permitted use is an exception to the rule of exclusion under Rule 404(b), and the Government here was never held to its "burden of identifying [or articulating this] proper purpose" on the record. Caldwell, 760 F.3d at 276. Moreover, even if Defendant's intent to distribute to Smith on December 8th was admissible to prove his intent on January 2nd, which the Government never articulated on the record, such a finding would fulfill only one part of the Third Circuit's 404(b) framework. The law still required us to articulate the chain of inferences that do not contain a propensity link, find the evidence to be probative and not unduly prejudicial, and provide a limiting instruction, where appropriate. See United States v. Brown, 765 F.3d 278, 292-95 (3d Cir. 2014); Sampson, 980 F.2d at 889. None of this occurred because we anticipated the evidence of each traffic stop to remain separate. Finally, even where past distribution is admissible to prove intent, there must typically be a connection between the events or the prior incident must have resulted in a conviction, unlike here, where the evidence pertains to an unrelated traffic stop occurring one month prior for which Defendant was contemporaneously charged in the indictment but for which he was not yet convicted. Rich, 343 F. Supp. 2d at 415; United States v. Bell, 516 F.3d 432, 443-44 (6th Cir. 2008) ("Unless the past and present crime are related by being part of the same scheme of drug distribution or by having the same *modus operandi*, the fact that a defendant has intended to possess and distribute drugs in the past does not logically compel the conclusion that he presently intends to possess and distribute drugs.").

consider the incidents.  Both here and in <u>Rich</u>, this instruction encompassed one paragraph in over twenty pages of jury instructions.  <u>Compare</u> (Doc. 66 at 251-71), <u>with</u> <u>Rich</u>, 326 F. Supp. 2d at 681-82.  It does not appear that the court in <u>Rich</u> gave a limiting instruction.  <u>Rich</u>, 326 F. Supp. 2d at 680-82.  In <u>Rich</u>, the court gave little weight to the effect of its instruction, despite recognizing the presumption that juries follow such instructions, because "at some point, a curative instruction cannot undo the damage of improper argument."  <u>Id.</u> at 682.  We agree with the court in <u>Rich</u>, and add that a *general* instruction in a final jury charge is less effective in undoing improper prosecutorial argument where, as here, we did not provide a specific *limiting* instruction regarding the Government's argument or the permissible purposes for which the jury could consider the evidence as to each stop.  <u>See</u> <u>Davis</u>, 726 F.3d at 445.

As the Government points out, however, there is one distinction between <u>Rich</u> and this case, which is that Defendant here did not object to the Government's closing argument or request a limiting instruction before we charged the jury.  (Docs. 66 at 251, 272; 82 at 13).  These failures are noteworthy, but the distinction has minimal value because it does not appear that the court in <u>Rich</u> took any additional action in response to the defendant's objection after closing, such as providing a specific limiting instruction. <u>Rich</u>, 326 F. Supp. 2d at 680-81.  As such, neither we nor the court in <u>Rich</u> provided a specific limiting instruction as to the government's argument.

In assessing the effect of our jury charge, we find it particularly significant that we did not provide a specific limiting instruction regarding the prosecutor's improper comments during closing or any non-propensity purposes for which the evidence of each traffic stop may be considered.  Such limiting instructions are significant.  <u>See</u> <u>United</u>

States v. Newby, 11 F.3d 1143, 1147 (3d Cir. 1993).  Under the circumstances, our failure

to provide a specific limiting instruction, even if Defendant did not request one, does not

give us "a sure conviction that the [Government's closing remarks] did not prejudice the

defendant."  Gambone, 314 F.3d at 177.

### 3.  *Strength of the Evidence of Defendant's Conviction*

Finally, turning to the strength of the evidence, we are troubled by the lack of

evidence supporting the possession with intent to distribute charge on January 2nd.

Although Defendant admitted to possessing cocaine base on January 2nd, the evidence

supporting his intent to distribute on that date was only the small quantity of 2.45 grams of

cocaine base in his possession, his two cell phones, and the Government's expert

testimony that the bags were packaged for distribution.  There was no other evidence of

an intent to distribute found in the car that day, and the small quantity of cocaine in and of

itself would most likely have been insufficient to support a distribution conviction.  See

United States v. Skipper, 74 F.3d 608, 611 (5th Cir. 1996).

Although the evidence on January 2nd was sufficient to bring the charge of

possession with intent to distribute to a jury in light of the Government's expert testimony,

the evidence certainly was not "overwhelming."  See United States v. Mastrangelo, 172

F.3d 288, 298 (3d Cir. 1999) (reversing district court's denial of motion for new trial when

evidence of guilt was not overwhelming and when "in this pivotal context, the

[prosecutorial] misstatements dramatically enhanced [defendant's] alleged role in the

conspiracy without supporting evidence").  Here, both the lack of evidence of intent to

distribute on January 2nd and the Government's use of the December 8th traffic stop in its

closing to help prove the January 2nd distribution charge support our finding that the

interests of justice warrant a new trial.  In closing, the Government suggested that the jury should use the strength of its case on December 8th—particularly Smith's testimony that Defendant attempted to sell her drugs that day and left a firearm in her vehicle—to bolster its proof that Defendant subsequently possessed crack cocaine on January 2nd with the intent to distribute.  The lack of overwhelming evidence to support Defendant's conviction on January 2nd, when combined with the Government's objectionable remarks in light of Rule 404(b) and our failure to provide a specific limiting instruction with regard to those remarks, does not give us a sure conviction that Defendant was not prejudiced by the Government's closing.  We will therefore grant Defendant's motion for a new trial.

*IV.*　　　　*Conclusion*

In sum, we find that it was initially proper to join the charges as to each traffic stop because the charges were of a similar character and there was no apparent risk of prejudice at the time because a jury could compartmentalize the evidence as to the separate incidents and because we instructed the jury to separately consider the evidence.  However, prejudice ensued when the Government, in its closing, repeatedly suggested that the jury should comingle the evidence from each stop.

We find that the interests of justice warrant a new trial, and in light of the foregoing events, the trials will be severed: the charges on December 8th will be tried separately from the charge on January 2nd.  An appropriate order will issue.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: August 29, 2017