**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **No. 1:16-cr-162** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **JWANE JOHNSON**, | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Before the Court are the Government's motions <u>in</u> <u>limine</u> (Doc. Nos. 123, 135) and its

notice (Doc. No. 124) of intent to introduce evidence pursuant to Federal Rule of Evidence

404(b). For the reasons provided herein, the Court will grant in part and deny in part the

Government's motions <u>in</u> <u>limine</u>, will preclude the Government from admitting Defendant's

prior drug-distribution convictions, will permit the Government to admit limited evidence

regarding Defendant's 2015 drug screenings, and will exclude the prior statements to parole

agents.

**I.      BACKGROUND**

The detailed factual and procedural history of this case—including the charges and

allegations at issue—has already been fully set forth in a prior August 29, 2017 opinion, (Doc.

No. 88 at 1-5), issued by the Honorable William W. Caldwell. Upon Judge Caldwell's

retirement, this case was reassigned to the undersigned.

The Court will not repeat the extensive details from the August 29, 2017 opinion here,

but instead will write only to address the pending motions <u>in</u> <u>limine</u> and Rule 404(b) issues. A

brief procedural history is nonetheless required.

In December of 2016, Defendant was tried and convicted on all counts of a four-count

indictment. (Doc. Nos. 57-58.) Counts I, II, and III stem from circumstances surrounding a

December 8, 2015 traffic stop ("December 8th stop"), and Count IV involves allegations regarding a subsequent, unrelated traffic stop on January 2, 2016 ("January 2nd stop"). (Doc. No. 88 at 1-5.) After his conviction, Defendant moved for a new trial. (Doc. No. 76.)

Judge Caldwell granted a new trial due to improper and prejudicial closing remarks made by the Government in the first trial. (Doc. Nos. 88, 89.) In those remarks, the Government improperly commingled the evidence from the two separate traffic stops. (See generally Doc. No. 88.) As noted in the August 29, 2017 opinion, the Government had attempted to use evidence from each separate traffic stop to support its case on the charge or charges stemming from the other traffic stop. (Id.) Judge Caldwell found that this tactic, without proper notice, legal support, and a limiting instruction, violated Federal Rule of Evidence 404(b)'s well-settled mandates and resulted in unfair prejudice to Defendant, necessitating a new trial. (See generally Doc. No. 88.) Furthermore, in light of Defendant's previous motion to sever and motion in limine, as well as the specific problems that arose at the first trial, Judge Caldwell severed Count IV and ordered that Counts I through III (related to the December 8th stop) be tried separately. (Id. at 27.)

Prior to the second trial addressing Counts I through III, the Government filed a notice pursuant to Federal Rule of Evidence 404(b)(2) indicating that it intended to present much of the evidence from the January 2nd stop to prove its case on the December 8th charges. (See generally Doc. No. 98.) Defendant opposed the introduction of this other-act evidence. (See generally Doc. No. 103.)

Shortly before trial, Judge Caldwell ruled that the proffered Rule 404(b) evidence was inadmissible. (Doc. No. 104.) A memorandum fully explaining that decision was issued several days after the trial concluded. (Doc. No. 116.)

In that memorandum, Judge Caldwell provided several reasons why the January 2nd evidence was inadmissible under Rule 404(b) to prove the charges stemming from the December 8th stop. First, the Government had failed to identify a proper, non-propensity purpose for the evidence. (Doc. No. 116 at 7-9.) Although it had proffered two non-propensity purposes enumerated in Rule 404(b)(2)—knowledge and intent—upon closer scrutiny neither of the proffered purposes applied because neither was "at issue" in the trial on Counts I through III. (Id.)

Specifically, knowledge was not at issue because Defendant neither denied knowing that a gun was discovered in the vehicle nor contended that he unknowingly possessed the gun; rather, he simply denied that the gun was his and that he ever possessed it. (Id. at 7-8.) The Government had also argued that the 404(b) evidence was admissible to show intent because Count I—attempt to distribute cocaine base—contained an intent mens rea. (Id. at 8.) In denying this argument, Judge Caldwell explained that the Third Circuit has explicitly rejected such a tactic, as admitting evidence of a prior conviction any time a defendant denied guilt of a similar charge containing a "knowledge" or "intent" mental state would "eviscerate Rule 404(b)'s protection and completely swallow the general rule against admission of prior bad acts." (Id. at 8-9 (quoting United States v. Caldwell, 760 F.3d 267, 281 (3d Cir. 2014).)

Second, assuming intent qualified as a proper non-propensity purpose, Judge Caldwell explained that the Government had also failed at the second step of the Rule 404(b) process. (Id. at 9-13.) That is, the Government had "failed to connect the proffered other-act evidence to a permissible purpose [intent to distribute on December 8th] without using a forbidden propensity inference." (Id. at 13.)

At the second trial on Counts I through III, Defendant was found guilty on Count I (attempt to distribute cocaine base), and acquitted on Counts II and III (the firearms charges). (Doc. Nos. 111, 115.)  The second trial on the remaining Count IV (possession with intent to distribute cocaine base on January 2, 2016) is scheduled to begin on March 20, 2018.  (Doc. No. 121.)

As noted, the Government intends to introduce Rule 404(b) evidence at the upcoming trial.  (Doc. No. 124.)  The Government plans to present evidence of Defendant's previous 2006 and 2012 drug distribution convictions to prove that Defendant knowingly possessed and intended to distribute cocaine base on January 2, 2016.  (Id. at 2-3.)  It also intends to introduce testimony that Defendant was subjected to random drug testing from September 2015 to December 2015 and had no positive tests for cocaine or cocaine base during that time.  (Id. at 3.) Evidence of negative drug tests would be offered to show intent to distribute, rather than personal use.  Finally, in its most recent motion in limine, (Doc. 135), the Government seeks to admit statements Defendant allegedly made to state parole board agents during interviews for previous convictions.  These statements mainly deal with Defendant's alleged drug and alcohol history.

Defendant argues that none of this other-act evidence is admissible in the upcoming trial. He contends that the Government has not met its burden under Rule 404(b) to demonstrate why the multiple pieces of other-act evidence are admissible to prove Count IV.  (Doc. No. 137 at 12-23 .)

The Government has also moved in limine to introduce certain intrinsic evidence.  First, the Government has moved to admit a statement Defendant purportedly made—after receiving Miranda warnings—during booking for his January 2nd arrest.  (Doc. No. 123 at 2.)  A second

motion in limine seeks to introduce evidence that when Defendant fled from the scene on January 2nd, he "struck a parked patrol car, nearly struck [a law enforcement officer], and struck a parked car containing a mother and four-year[-]old child." (Id. at 3.)

Defendant does not dispute the admissibility of the alleged booking statement. (Doc. No. 137 at 6 n.1.) He does, however, dispute the admissibility of the prejudicial details of his flight from police, and argues that the Government has not provided an adequate reason to alter Judge Caldwell's prior decision on this issue. (Id. at 10-11.)

The motions have been fully briefed and are now ripe for disposition.

## II.     DISCUSSION

The Government has raised multiple evidentiary issues—some new, and some that have been previously litigated. The Court will address each issue in turn.

### A.     THE GOVERNMENT'S MOTIONS *IN LIMINE* DEALING WITH INTRINSIC EVIDENCE

As noted, the Government has moved in limine to introduce a statement Defendant purportedly made during booking for his January 2nd arrest. (Doc. No. 123 at 2.) A second motion in limine seeks to introduce evidence that when Defendant fled from the scene on January 2nd, he "struck a parked patrol car, nearly struck [a law enforcement officer], and struck a parked car containing a mother and four-year[-]old child." (Id. at 3.)

#### 1.     Alleged Statement at Booking

According to the Government, when the cocaine base at issue in Count IV was discovered in Defendant's jacket during a search performed by Richard Swanson ("Swanson") at the Dauphin County Booking Center, Defendant responded in a manner indicating either that the substance was not his, or that he did not know what the substance was. The Government seeks to have Swanson testify regarding what Defendant said to him when the package of suspected

narcotics was found.  Judge Caldwell excluded this statement at the first trial because it had only been disclosed to defense counsel several days before trial.[1]  (See Doc. No. 65 at 144, Dec. 2016 Trial Tr. vol 1, 144 [hereinafter "Doc. No. 65"].)

Initially, the Court notes material inconsistencies in the proffered statement that run throughout the Government's motion, briefing, and exhibits.  In the motion in limine itself, the Government contends that the statement Defendant made to Swanson, after being presented with the suspected drugs found in the jacket, was "I don't know what that is," or words to that effect. (Doc. No. 123 at 2.)  That same statement is repeated twice in the brief in support of the motion in limine.  (Doc. No. 126 at 14, 29.)

However, in the same brief, the Government indicates that the statement Defendant allegedly made was "it's not mine, I've never seen it before."  (Id. at 18.)  Likewise, in the exhibits to the brief, the statement provided to defense counsel on the eve of the first trial was "it's not mine, I've never seen it before."  (Doc. No. 126-2 at 2.)

The differences between these statements are not meaningless.  The first statement implies lack of knowledge that the package contained illegal narcotics.  The second implies lack of guilt for possessing illegal narcotics, i.e., "they are not my narcotics."  Because the second statement ("it's not mine, I've never seen it before") appears in the December 2, 2016 supplemental pretrial disclosure to defense counsel, (Doc. No. 126-2 at 2), the Court will assume this statement more accurately reflects Swanson's proffered testimony.

Although the admissibility of this statement is not challenged by Defendant, it nonetheless merits a brief discussion as it appears to be tethered to the Government's Rule

---

[1] As explained at sidebar during the first trial, the reason for the late disclosure was that the Government had only just learned of the statement three days prior to the first trial.  (See Doc. No. 65 at 144, Dec. 2016 Trial Tr. vol 1, 144.)

(404)(b) argument. In its Rule 404(b) notice and briefing, the Government contends that Defendant's past drug-distribution convictions are admissible to prove his "knowledge that he possessed crack cocaine." (Doc. No. 126 at 29.) Specifically, the Government argues that Defendant "placed this issue in question with his statement to Swanson." (Id.) The record likewise reflects that the only way knowledge could be considered at issue in the trial on Count IV is by the alleged booking statement. This is particularly true when, during the first trial, Defendant opened with a statement conceding knowing possession of a controlled substance on January 2nd. (See, e.g., Doc. No. 65 at 50-51 (defense counsel arguing in opening statement that Defendant does not dispute that he possessed cocaine base, but rather maintains it was for personal use and denies that he intended to distribute it).)

The booking statement is admissible at trial. However, to the extent that the Government seeks to admit this statement solely to manufacture a non-propensity purpose for bringing in Defendant's prior drug-distribution convictions, the Court finds such a tactic unavailing. The reasons for why this is so are fully set forth in Section II. B. 1. a., below.

### 2.      Evidence Regarding Circumstances of Flight from Police

The Government also seeks to introduce evidence that when Defendant fled from the scene on January 2nd, he "struck a parked patrol car, nearly struck [a law enforcement officer], and struck a parked car containing a mother and four-year[-]old child." (Doc. No. 123 at 3.) During the first trial, Judge Caldwell allowed the admission of evidence that Defendant fled from police in the car he was driving, hit a tree, and was pursued for ten blocks before coming to a stop. (Doc. No. 65 at 138-42.) But Judge Caldwell explicitly excluded the inflammatory details about almost striking a police officer and the alleged accidents with the police car and mother. (Id. at 138-41.)

The Court does not find any reason to deviate from Judge Caldwell's prior rulings on this issue, nor has the Government provided one. Defendant's flight from police is relevant to showing consciousness of guilt for the crime charged in Count IV. See THIRD CIRCUIT MODEL CRIMINAL JURY INSTRUCTIONS § 4.30. The evidence that Defendant nearly struck a police officer and had minor collisions with a police vehicle and a civilian mother and her young child is entirely irrelevant to the charge at hand. Even if it somehow were relevant, it clearly would fail the Rule 403 balancing test, as this evidence is highly prejudicial and would substantially outweigh any scant probative value it may have.

The Government alternatively argues that if Defendant elicits a particular statement from one of the arresting officers, the evidence that was excluded at the first trial should be admitted to rebut the inference of bias raised by this statement. Upon cross-examination at the first trial, Officer Darrin Bates ("Officer Bates") affirmed that after Defendant had been apprehended, Officer Bates told Defendant he was "going to bury him under the prison." (Doc. No. 65 at 168.)

The Court notes that Defendant has indicated that "[i]t is unlikely that the defense will need to present" this statement in the upcoming trial. (Doc. No. 137 n.6.) If Defendant does elicit the "bury him under the prison" statement from Officer Bates, however, the Court finds that it would be fair rebuttal for Officer Bates to explain his reasons for making that statement. The statement raises the inference that Officer Bates is biased against Defendant. Thus, Officer Bates should be permitted to rebut that inference by explaining why he made the statement, which fairly could include—if averred by Officer Bates—that he did so because of the circumstances surrounding Defendant's flight from police. See generally United States v. Pantone, 609 F.3d 675, 680-81 (3d Cir. 1979) (discussing admission of rebuttal evidence).

Nonetheless, to avoid the risk of substantially unfair prejudice, some inflammatory details must be omitted.  Officer Bates may explain on rebuttal that Defendant, upon fleeing, hit a parked patrol car, almost hit a police officer, and also hit another parked vehicle during the chase.  He may not, however, venture into the fact that Defendant's vehicle came to a stop by hitting a car occupied by a mother and her four-year-old daughter.[2]

B.    THE RULE 404(b) EVIDENCE

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  FED. R. EVID. 404(b)(1).  An exception to this rule provides that such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  FED. R. EVID.  404(b)(2).  In a criminal case, where evidence is offered to prove a proper, non-propensity purpose under Rule 404(b)(2), the prosecutor should provide "notice of the general nature of any such evidence that the prosecutor intends to offer at trial."  FED. R. EVID.  404(b)(2)(A).

"Rule 404(b) is a rule of general exclusion," and "directs that evidence of prior bad acts be excluded—unless the proponent can demonstrate that the evidence is admissible for a non-propensity purpose."  United States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017) (quoting United States v. Caldwell, 760 F.3d 267, 276 (3d Cir. 2014)).  Rule 404(b) "reflects the revered and longstanding policy that, under our system of justice, an accused is tried for *what* he did, not *who* he is."  Caldwell, 760 F.3d at 276.  "Because Rule 404(b) is a rule of general exclusion, the party

---

[2] This apparently minor accident occurred after Defendant slowed down and exited the vehicle to flee on foot, and his still-moving car ran into the front end of a parked civilian car.  (See Doc. No. 126-1 at 4-5.)  The accident caused only minor vehicle damage and neither occupant was injured.  (Id.)

seeking to admit other-acts evidence has 'the burden of demonstrating [the evidence's] applicability.'" Repak, 852 F.3d at 241 (alteration in original) (quoting Caldwell, 760 F.3d at 276).

Before other-act evidence can be admitted, four distinct steps must be taken. Caldwell, 760 F.3d at 276. First, the proponent of the other-act evidence "must identify a proper 404(b) purpose for admission (such as knowledge or intent) that is 'at issue' in, or relevant to, the case." Id. Second, after "the proponent identifies a non-propensity purpose that is 'at issue' in the case, the proponent must . . . explain how the evidence is relevant" to the identified non-propensity purpose. Id. Third, "the court must evaluate pursuant to Rule 403 whether the evidence is sufficiently probative, such that its probative value is not substantially outweighed by the inherently prejudicial nature of [other-act] evidence." Id. at 277 (citation omitted). Finally, if requested, "the court must provide a limiting instruction, which advises the jury that the [other-act] evidence is admissible for a limited purpose and may not be considered in another manner." Id. (citations omitted). "This methodical process requires 'careful precision' by both the proponent in proffering the [other] act evidence and by the trial judge who must decide the question of admissibility." United States v. Brown, 765 F.3d 278, 291 (3d Cir. 2014) (citing Caldwell, 760 F.3d at 274).

### 1.      Prior Drug-Distribution Convictions

The Government first seeks to introduce Defendant's prior drug-distribution convictions from 2006 and 2012. (Doc. No. 126 at 28-34.) According to the Government, these other acts demonstrate knowledge and intent, and thus are admissible under Rule 404(b)(2).

### a. Knowledge

The first step in the Rule 404(b) process is determining whether a permissible, non-propensity purpose has been identified by the proponent of the evidence. Knowledge is one of the enumerated exceptions to the general rule of exclusion of other-act evidence. FED. R. EVID. 404(b)(2).

The Government argues that Defendant's prior drug-distribution convictions "demonstrate his knowledge that he possessed crack cocaine." (Doc. No. 126 at 29.) It then summarily concludes that knowledge is "clearly at issue in this case" without providing any reason for why this is so. In its discussion of the second step of the Rule 404(b) process, however, it does mention that Defendant placed knowledge in question "with his statement to Swanson[.]" (Id.) This particular statement has been fully discussed above. See Section II. A. 1., supra.

The Court disagrees that knowledge is at issue in the present case. Defendant's alleged statement to Swanson at booking notwithstanding, knowledge is not genuinely at issue because Defendant has conceded knowing possession of cocaine base and argues only that he did not intend to distribute the drugs. See, e.g., United States v. Lee, 612 F.3d 170, 186-87 (3d Cir. 2010) (finding that knowledge was not at issue in a trial for being a felon in possession of a firearm when defendant never argued that he did not know a firearm was in his vehicle's back seat, but rather disputed the felon-in-possession charge by denying that he ever possessed the firearm); Caldwell, 760 F.3d at 278-79 (finding that knowledge was not at issue in § 922(g) case where prosecution's theory was based solely on actual possession, and defendant argued that he did not possess the gun rather than asserting unknowing possession). Indeed, while knowing or intentional possession is an element of the instant offense, United States v. Freeman, 763 F.3d

322, 332 (3d Cir. 2014), simply because a defendant denies guilt of a crime with a knowledge-based mens rea does not automatically open the door to prior convictions of the same crime, Caldwell, 760 F.3d at 281 (citing United States v. Miller, 673 F.3d 688, 697 (7th Cir. 2012)).

Accordingly, because knowledge is not at issue in this case, it is not a proper basis for admitting Defendant's prior drug-distribution convictions. Caldwell, 760 F.3d at 281. And because the Government fails at step one of the Rule 404(b) process, the Court need not consider the remaining steps for this proffered purpose.

The Court notes, however, that even if the Government could satisfy steps one and two for "knowledge," the step three Rule 403 balancing would almost certainly end in Defendant's favor. See United States v. Jemal, 26 F.3d 1267, 1274 (3d Cir. 1994) ("[W]e believe that district courts should generally deem prior bad acts evidence inadmissible to prove an issue that the defendant makes clear he is not contesting. The relevance of the prior bad acts evidence will be minimal in most such cases, since the evidence will not bear on the issues being contested. And the undue prejudice will be quite high, since prior bad acts evidence tends to be quite persuasive."). The reasoning in Jemal applies directly to the instant case in regards to showing knowledge: the prior drug-distribution convictions' probative value would be minimal, and the prejudice would be "quite high." Id.

### b. Intent

The Government next argues that the prior convictions are admissible to show intent to distribute. (Doc. No. 126 at 28-34.) Intent, like knowledge, is one of the enumerated exceptions to the general rule of exclusion of other-act evidence. FED. R. EVID. 404(b)(2).

Unlike knowledge, however, intent is clearly at issue in this case. At his first trial, Defendant openly admitted possession on January 2nd, but denied that he intended to distribute

the drugs. Thus the Government has properly identified "intent" is a permissible, non-propensity purpose under step one of the Rule 404(b) process.

The Government falters at step two. The second step in the Rule 404(b) process is "crucial." Caldwell, 760 F.3d at 276. "The task is not merely to find a pigeonhole in which the proof might fit, but to actually demonstrate that the evidence proves something other than propensity." Id. (internal quotation marks, alterations, and citations omitted). Thus, "[i]n proffering such evidence, the [proponent] must explain how it fits into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." United States v. Davis, 726 F.3d 434, 442 (3d Cir. 2013) (citing United States v. Sampson, 980 F.2d 883, 887 (3d Cir. 1992)). Stated differently, the proponent of the evidence must explain "how the evidence should work in the mind of a juror to establish the fact the [proponent] claims to be trying to prove." Repak, 852 F.3d at 244 (citation and internal quotation marks omitted). "[T]his chain [must] be articulated with careful precision because, even when a non-propensity purpose is 'at issue' in a case, the evidence offered may be completely irrelevant to that purpose, or relevant only in an impermissible way." Id. at 243 (alterations in original) (quoting Caldwell, 760 F.3d at 281).

The Government provides only one sentence to satisfy step two. It argues that the prior distribution convictions are relevant to establishing intent to distribute as they show that Defendant "was aware of the manner in which cocaine base was packaged in Dauphin County, the manner in which cocaine base was distributed in Dauphin County, the prices for which cocaine base sold in Dauphin County, and the manner in which cocaine base was ingested." (Doc. No. 126 at 29.)

First, as Defendant notes, the Government's single-sentence explanation fails to properly set forth its chain of inferences. See Caldwell, 760 F.3d at 281 (explaining that failure to carefully articulate the chain of inferences to show why proffered 404(b) evidence "is actually relevant to the identified non-propensity purpose" is fatal to the admission of that evidence). Liberally construing the Government's brief, the chain of inferences appears to be as follows: the previous distribution convictions demonstrate awareness of drug-distribution practices in Dauphin County; only someone with awareness of distribution practices would package the cocaine base in the manner it was found on January 2nd; thus the previous convictions support the inference that Defendant was intending to distribute the drugs found on January 2nd.

There are multiple problems with this reasoning. First, and most importantly, the Government has not explained how awareness of drug packaging, pricing, and ingestion necessarily implies intent to distribute. Presumably, those who purchase drugs for personal consumption are equally aware of how drugs are packaged, priced, and ingested. Thus, there is significant missing link in the Government's chain of logic: how intent to distribute necessarily follows from awareness of drug packaging, pricing, and ingestion.

Second, the proffered chain of inferences appears to work in reverse. The Government is essentially arguing that because of the way the January 2nd drugs were packaged, Defendant must have prior experience with drug dealing in order to know how to prepare drugs for distribution in Dauphin County. But that is not how step two of Rule 404(b) operates. At step two, the proponent of the other-act evidence must show why that evidence is relevant to establishing the current non-propensity purpose, not why the current evidence tends to support the other-act evidence.

Finally, the argument set out by the Government in this step appears to be what the Government will present as evidence in its case in chief at trial—that the manner of packaging shows intent to distribute. (See, e.g., Doc. No. 66 at 16-18, Dec. 2016 Trial Tr. vol 2, 204-06 (DEA witness for Government in first trial explaining how packaging indicates distribution rather than personal consumption).) The Government does not sufficiently explain how previous drug distribution convictions figure into this calculus, except through an impermissible propensity purpose, i.e., because Defendant was convicted for distributing drugs in the past, he intended to distribute the drugs found on January 2nd.

The Government also cites multiple cases to support the admission of the prior drug convictions to show intent to distribute. These cases, however, do not support the admission of the prior convictions in the instant case.

Most of the cases upon which the Government relies pre-date the Third Circuit's more recent and comprehensive jurisprudence involving the admissibility of Rule 404(b) evidence. See Repak, 852 F.3d at 240-50; Brown, 765 F.3d at 291-94; Caldwell, 760 F.3d at 274-84; Davis, 726 F.3d at 440-45; Smith, 725 F.3d at 344-48. While cases like United States v. Givan, 320 F.3d 452 (3d Cir. 2003), United States v. Lopez, 340 F.3d 169 (3d Cir. 2003), Unites States v. Boone, 279 F.3d 163 (3d Cir. 2002), and United States v. Vega, 285 F.3d 256 (3d Cir. 2002), are undoubtedly binding precedent in this circuit, none of these cases is similar to the facts of this case nor stands for the broad proposition that when intent is at issue, prior similar convictions categorically come in under Rule 404(b)(2). Rather, the Third Circuit requires a case-by-case, fact-specific approach to Rule 404(b) questions. See Caldwell, 760 F.3d at 277; Deena Greenberg, *Closing Pandora's Box: Limiting the Use of 404(b) to Introduce Prior Convictions in Drug Prosecutions*, 50 HARV. C.R.-C.L. REV. 519, 537 (2015).

The other cases the Government cites are also distinguishable and unpersuasive. In United States v. Moffitt, 601 F. App'x 152 (3d Cir. 2015) (nonprecedential), the court of appeals found that the district court had not abused its discretion by admitting prior distribution convictions to show intent even though the district court had failed to "outline the chain of inferences" on the record. 601 F. App'x at 155. The court of appeals noted that intent was at issue, and found that the relevance of the prior convictions was "apparent from the record," and thus admission did not amount to an abuse of discretion. Id.

First, Moffitt is a non-binding decision with no precedential effect. See In re: Grand Jury Investigation, No. 06-1474, 445 F.3d 266, 276 (3d Cir. 2006). Second, the Court finds the cohesive instruction of Repak, Brown, Caldwell, Davis, and Smith unmistakable: step two requires a careful articulation of the chain of inferences linking the other-act evidence to a proper purpose without using an impermissible propensity inference. Whether another district court did or did not abuse its discretion in admitting other-act evidence is of no matter to this Court at this juncture. The task at hand, as clearly set forth by the Third Circuit, is to require a carefully articulated, logical explanation of how other-act evidence is relevant to showing a permissible purpose without relying on propensity in that explanation. If the proponent cannot satisfy this requirement, the other-act evidence must be excluded.

United States v. Snard, 497 F. App'x 228 (3d Cir. 2012) (nonprecedential), is equally unpersuasive. There, the court of appeals again found only that the district court had not abused its discretion in admitting a prior drug-offense conviction. Snard, 497 F. App'x at 233. In its brief discussion of the issue, the court relied primarily on Givan, remarking that like in Givan "the Government here needed to prove knowledge and intent to satisfy its burden of showing knowing possession with intent to distribute[.]" Snard, 497 F. App'x at 233.

First, the <u>Snard</u> opinion seems to intimate that prior similar-conviction evidence is admissible simply because the prosecution had to prove the elements of an offense involving knowledge and intent mental states.  <u>See id.</u>  To the extent that <u>Snard</u> may conflict with <u>Caldwell</u>, which was decided after <u>Snard</u> and requires more than a mere claim of innocence on an offense containing a knowledge or intent <u>mens rea</u>, <u>see</u> <u>Caldwell</u>, 760 F.3d at 281, this Court will follow—as it must—the more recent and binding <u>Caldwell</u> decision.  Second, the <u>Snard</u> court provides little to no discussion regarding the first three steps of Rule 404(b).  Third, <u>Givan</u>, upon which the <u>Snard</u> court solely relied, has been found to exist "at the outer bounds of admissibility under Rule 404(b)."  <u>Davis</u>, 726 F.3d at 444.  Finally, the facts of <u>Givan</u> differ substantially from the instant case.

Consequently, the Court finds that the Government has failed to articulate a chain of inferences showing how the proffered other-act evidence is relevant to the non-propensity purpose of intent without relying on an impermissible propensity link.  Because the Government falters at step two, the Court will not perform the Rule 403 balancing required at step three.

In sum, the Government has not carried its burden to satisfy the requirements of Rule 404(b) regarding Defendant's prior distribution convictions.  Accordingly, that other-act evidence will be excluded from the upcoming trial on Count IV.

## 2. Prior 2015 Drug Tests

The Government has also provided notice that it intends to introduce evidence regarding the results of three random drug tests Defendant underwent from September 2015 to December 2015.  (Doc. No. 124 at 3-4.)  According to the Government, these tests were negative for cocaine or cocaine base, and will be introduced to prove intent to distribute on January 2nd.  (<u>Id.</u> at 4.)  The Government fares much better with this other-act evidence.

First, as fully explained above, intent to distribute is clearly at issue in this case. Therefore, the Government has satisfied step one of the Rule 404(b) process.

Next, the Government must explain how this other-act evidence is relevant to the non-propensity purpose (intent to distribute) without relying on an impermissible propensity inference. Here, the prosecution has set forth its chain of inferences, and that chain is much more logically sound.

Defendant maintains he possessed cocaine base on January 2, 2016, for personal use, rather than for distribution. The other-act evidence—random drug tests from September through December 2015 that were negative for cocaine or cocaine base—creates an inference that Defendant did not use cocaine or cocaine base around the time of testing. The last drug test was performed less than a month before Defendant's arrest on January 2, 2016, and thus a jury could reasonably infer that Defendant was not using cocaine or cocaine base near the time of his arrest. This inference would then permit the jury to infer that Defendant did not possess the cocaine base on January 2nd for personal use, but rather intended to distribute the drugs. There is no impermissible propensity inference in this chain of logic. Thus, step two is satisfied.

At step three, the Court must perform a Rule 403 balancing analysis. Here, that process is fairly simple. The Court agrees with the Government that the probative value of the drug tests is significant. Defendant maintains he possessed cocaine base for personal use. The negative tests in the months prior to his January 2nd arrest tend to show that this assertion may be untrue, and thus are probative of what appears to be the ultimate issue: whether Defendant had the requisite intent to distribute.

In addition, contrary to prior similar convictions, drug tests negative for cocaine or cocaine base are not inherently and significantly prejudicial. Hearing that a defendant tested

negative for an illicit substance is not, in itself, prejudicial.  Notably, the Government intends to

abstain from any reference regarding why Defendant was tested, or that he tested positive for

marijuana.  (Doc. No. 126 at 36.)  Admittedly, a juror may infer some type of parole or

supervised release from this information, but, as the Government notes, those are not the only

reasons that someone may undergo random drug screenings.  Therefore, the danger of unfair

prejudice from this other-act evidence is comparatively low.

Therefore, under Rule 403, the probative value of the proffered other-act evidence is not

substantially outweighed by the dangers posed by its admission.  Accordingly, the Government

has satisfied step three.

Lastly, upon Defendant's request, an appropriate limiting instruction will be given by the

Court directly after the evidence is admitted and also during the final jury instructions to help

reduce the risk of unfair prejudice.  Defendant will have the choice regarding whether a limiting

instruction is given, see United States v. Gomez, 763 F.3d 845, 860 (7th Cir. 2014), and such

decision should be made on the record.[3]

### 3.      Prior Statements Made to State Parole Agents

In its recent supplemental motions in limine, (Doc. No. 135), the Government identifies

more Rule 404(b) evidence that it intends to admit at Defendant's upcoming trial.  First, the

Government wants to admit testimony from Pennsylvania Board of Probation and Parole Agent

Denise Zelznick ("Agent Zelznick").  (Id. at 2.)  According to the Government, Agent Zelznick

will testify that (1) during one interview in 2012 and two interviews in 2014, Defendant admitted

that he had a history of marijuana and alcohol use but never mentioned using cocaine or cocaine

---

[3] Defendant notes that the Government's proffered drug-testing evidence raises hearsay
concerns.  (Doc. 137 at 21, 22.)  Neither party has addressed this issue.  Accordingly, if a hearsay
objection is raised at trial, the Government must be prepared to overcome this evidentiary hurdle
should it desire to present the drug-testing evidence.

base; (2) during the May 2014 interview, Defendant specifically denied using any other drug than marijuana; and (3) during the same May 2014 interview, Defendant reported that his primary income came from selling drugs and that he had made substantial sums of money doing so since age fourteen.  (Id. at 3.)

Next, the Government plans to introduce testimony from Pennsylvania Board of Probation and Parole Agent Elliot DeFrancesco ("Agent DeFrancesco").  (Id. at 4.)  Agent DeFrancesco will testify that during an interview with Defendant on December 3, 2015, about the recent positive-for-marijuana drug tests, see Section II. B. 2., supra, Defendant did not indicate that he used cocaine or cocaine base.  (Id.)

Initially, the Court rejects the Government's contention that the alleged statement made to Agent Zelznick regarding previous drug dealing is "intrinsic" to the charged offense and thus does not implicate Rule 404(b).  (Doc. No. 135 at 10-11.)  This evidence does not come close to falling into one of the "two narrow categories of evidence" that comprise intrinsic evidence: evidence that "directly proves the charged offense," and "uncharged acts performed contemporaneously with the charged crime" that "facilitate the commission of the charged crime."  United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010) (citations and internal quotation marks omitted).  Nothing about the statement or its contents directly proves the charge of possession with intent to distribute on January 2, 2016.  Furthermore, the statement was made two years prior to the instant offense, and thus neither the making of the statement nor its content was contemporaneous with the charged offense, let alone to facilitate the instant offense.

The Government next argues that the statements made to the parole agents are admissible to show intent to distribute.[4] Defendant has raised multiple arguments against the admission of this evidence.

First, Defendant contends that the statements are not admissible because they were made in response to interrogation by a state parole officer while Defendant was incarcerated, and Defendant was not informed of his Miranda rights prior to making these statements. (Doc. No. 137 at 23.) Although undeveloped, this argument raises issues regarding whether Defendant was "in custody" for the purposes of Miranda when he was questioned by Agent Zelznick and Agent DeFrancesco, and, therefore, whether Miranda warnings were necessary. See Howes v. Fields, 565 U.S. 499, 514-17 (2012) (holding that whether prisoner being interviewed by authorities while incarcerated is in custody for Miranda purposes is a fact-specific analysis that "should focus on all the features of the interrogation."); Minnesota v. Murphy, 465 U.S. 420, 426 (1984) (explaining that Fifth Amendment protections against self-incrimination apply "notwithstanding that a defendant is imprisoned or on probation at the time he makes incriminating statements, if those statements are compelled they are inadmissible in a subsequent trial for a crime other than that for which he has been convicted.").

The Government argues that Miranda does not apply to these statements. It contends that (1) neither questioning was "an interrogation" and (2) "in neither case was the government seeking incriminating information" and in fact the statements actually show that Defendant was "not a drug user." (Doc. No. 149 at 6-7.) These arguments miss the point of Miranda.

---

[4] To the extent the Government again relies on "knowledge" to provide the permissible basis to bring in the prior statements to parole agents, (see Doc. No. 136 at 7, 11), the Court rejects this contention for the same reasons already set forth in Section II. B. 1. a., supra. In short, knowledge is not genuinely at issue, and even if it were because of the alleged booking statement, the Rule 403 balancing at step three would exclude such evidence under the facts of this case. Id.

"Interrogation" does not necessarily mean bringing a suspect to the jailhouse, putting him in an isolated room, and questioning him about a crime for which he is suspected. "Interrogation" for Miranda purposes simply means "express questioning" or "its functional equivalent" by government agents while the suspect is in custody. Rhode Island v. Innis, 446 U.S. 291, 300 (1980). Moreover, "incriminating" means "any response—whether inculpatory or exculpatory— that the *prosecution* may seek to introduce at trial." Id. at 301 n.5 (citing Miranda v. Arizona, 384 U.S. 436, at 476-77 (1966)).

Here, the facts and circumstances under which Defendant's statements to the parole agents were made are unknown at this time, and thus it is unclear whether Miranda would permit the admission of these statements in the upcoming trial. This uncertainty is reason alone to deny the Government's motion asking the Court to preemptively find such statements admissible.

Defendant next argues that the Government has failed to meet its burden under Rule 404(b) in that there is no legitimate purpose for the evidence, "what [Defendant] did at the age of 14 is completely irrelevant," and the Government has not satisfied the steps for properly admitting Rule 404(b) evidence. (Doc. No. 137 at 23.)

The Government contends that the statements to the parole agents are admissible to show intent to distribute. At the outset, the alleged statements to Agent Zelznick regarding prior drug distribution, including when Defendant allegedly starting selling drugs and how much money he made, are inadmissible for the same reasons that his prior drug convictions are inadmissible. See Section II. B. 1. b., supra. That is, the Government is unable to set forth a chain of inferences, no link in which is an impermissible propensity inference, which would demonstrate how those prior statements (or the acts contained therein) are relevant to proving intent to distribute on January 2nd.

Even assuming the Government can meet steps one and two of the Rule 404(b) process for the other statements to the parole agents, it encounters multiple problems at step three.

When considering the Rule 403 balancing, the probative value of the proffered statements is low. The statements to Agent Zelznick were made two to four years prior to the January 2nd incident. The fact that Defendant, at that time, only admitted to having substance abuse problems with marijuana and alcohol has limited probative value regarding whether he used cocaine base at the time of his 2016 arrest. The statement to Agent DeFrancesco is also of limited probative value in that it is merely cumulative of the results of the drug tests, which the Government already plans on admitting.

Second, the potential prejudice of these statements is not insignificant. The statements to Agent Zelznick involve drug and alcohol use. They also have the potential for raising the inference with the jury that Defendant was under state-sponsored criminal monitoring such as parole or probation, despite the Government's plan of having the parole agents identify themselves as "state employee[s]" who interviewed Defendant about his "drug and alcohol history." (Doc. No. 136 at 8.) As such, although the statements are not extremely prejudicial in themselves, when balanced against the minimal probative value they provide, that probative value is substantially outweighed by the unfair prejudice they would cause.

Moreover, as noted above, even if the Rule 403 balancing favored admission, the outstanding Miranda issues require denial of the motions in limine.

### III.    CONCLUSION

Based upon the foregoing, the Court will grant in part and deny in part the Government's motions in limine, (Doc. Nos. 123, 135), as described above. The Court will also preclude the Government from introducing evidence of Defendant's prior drug distribution convictions, but

will permit the introduction of the evidence regarding the 2015 drug testing as limited by the Government's briefing, (Doc. No. 126 at 36).

An Order consistent with this Memorandum follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania